IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| CINDY GRAHAM, | ) | |
| | ) | |
| | ) | No. 2:16-cv-03863-DCN |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| THE UNITED STATES OF AMERICA | ) | |
| and RELIANT SERVICES, INC. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on a motion to dismiss filed by the defendant the United States ("United States"). For the reasons set forth below, the court grants the government's motion. Accordingly, the court dismisses the government as a party to this suit.

## I. BACKGROUND

This case arises out of a slip-and-fall accident that occurred at the Naval Weapon Station, Joint Base Charleston Commissary ("NWS Commissary") at 1797 Red Bank Road, Building 764 in Goose Creek, SC. Plaintiff Cindy Graham ("Graham") alleges that on July 10, 2015, she was an invitee shopping for groceries at the NWS Commissary when she fell on a slippery floor due to water dripping from a leaking air conditioner. The NWS Commissary is operated by the Defense Commissary Agency ("DeCA"), a federal agency affiliated with the United States Department of Defense. On July 10, 2015, DeCA entered into a contract with Reliant Services, Inc. ("Reliant") to manage the NWS Commissary, and this contract was in effect on the date of Graham's fall.

1

Graham contends that as a result of the fall she suffered significant injuries. She further alleges that the cause of the water on the floor was a malfunctioning air conditioner unit, which was owned, selected, and installed by the defendants. Graham filed a complaint under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq. alleging that defendants were negligent by failing to maintain the premises, failing to exercise due care, failing to act as a reasonable person in the situation, failing to post signs, failing to inspect premises, failing to warn, failing to hire, train, and manage adequate personnel, failing to develop adequate policies and procedures, and failing to take actions to correct known problems. Graham amended the complaint on July 17, 2017, and the amended complaint is now the operative complaint.

The government filed a motion to dismiss on July 31, 2017, which Graham responded to on September 12, 2017. The government replied on September 27, 2017. The court held a hearing on January 16, 2018. The motion has been fully briefed and is now ripe for the court's review.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss for "lack of subject-matter jurisdiction." The determination of subject matter jurisdiction must be made at the outset before any determination on the merits. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998). "The plaintiff bears the burden of persuasion if subject matter jurisdiction is challenged under Rule 12(b)(1)." Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995). If the plaintiff cannot overcome this burden, the claim must be dismissed. Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005). In ruling on a Rule 12(b)(1) motion, "the court may consider exhibits outside the pleadings" and

"is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Williams, 50 F.3d at 304 (internal citations and quotations omitted).

### III. DISCUSSION

The government moves to dismiss all of Graham's claims against it, contending that the FTCA's discretionary function exception and the independent contractor exception bar this action against the government. ECF No. 26 at 1. The court addresses each argument in turn.

    1.    **Discretionary Function Exception**

The government first argues that the discretionary function exception bars this FTCA claim. Under 28 U.S.C. § 2680(a), liability shall not attach to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). There is a two-step analysis to determine whether the "discretionary function" exception is appropriate. See United States v. Gaubert, 499 U.S. 315, 322 (1991). First, the court must determine whether the governmental action at issue "involves an element of judgment or choice." Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988). If the action is "the subject of any mandatory federal statute, regulation, or policy prescribing a specific course of action," then the action does not involve an element of choice. Baum v. United States, 986 F.2d 716, 720 (4th Cir. 1993); see also U.S. Aviation Underwriters, Inc. v. United States, 562 F.3d 1297, 1299 (11th Cir. 2009) ("A function is non-discretionary if a federal statute, regulation, or

policy specifically prescribes a course of action for an employee to follow where the employee has no rightful option but to adhere to the directive.").

The court is persuaded by the government's argument that its contract with Reliant for the daily operations at the NWS Commissary involves the discretionary right to contract, as its decision to enter into a contract with Reliant as opposed to employing government employees to engage in custodial work is necessarily bound by economic and policy concerns.[1] It finds particularly helpful the Fourth Circuit's opinion in Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995), which has almost identical facts. In Williams, a plaintiff who was injured when she slipped and fell in the lobby of a building that was leased by the United States and managed by a custodial company brought an FTCA suit. Id. at 301. The Fourth Circuit held that the government's decision to retain that particular custodial company to clean and maintain the premises of the building was within the discretionary function exception to the FTCA. Id. In Williams, the court found it particularly persuasive that the contract between the United States and the contractor was "very broad" and provided that the contractor would provide "custodial and maintenance services," and it was the contractor that was "fully responsible for the management, operation, maintenance, repair and support operations" of the building. Id.

---

[1] Graham's argument that under the contract the government had a nondiscretionary duty to notify Reliant day custodial staff when it found unclean conditions in the NWS Commissary misses the point. The discretionary function exception in this case governs the government's decision to contract with Reliant to administer custodial services, not the government's decision to determine if water was on the floor of the NWS commissary.

Similarly, here the contract between DeCA and Reliant states that DeCA delegates "day custodial" tasks at the NWS Commissary, or "tasks that are normally done during hours when the commissary is open for business," to Reliant. On the date of Graham's fall, the NWS Commissary was operated by Reliant Services and DeCA under a contract, requiring that Reliant manage day custodial services. The contract, in a section entitled "day custodial," defined "day custodial services" as "custodial tasks that are normally done during hours when the commissary is open for business, when custodial care is generally limited to rapid response and quick fix action necessary to maintain clean and safe conditions." ECF No. 26-2, Award Contract at 78. The government argues that under this contract, it has no authority to control daily custodial activities such as mopping up water from a leaking air conditioner. In support, the government points to multiple portions of the contract that explain the custodial duties of Reliant employees. For example, the contract states under a section entitled "cleaning without government notification" that "[w]hen Contractor personnel find an unclean or unsafe condition . . . , they shall take whatever action may be necessary to clean up or remove the condition without notification by the Government." Id. at 79. A review of the contract demonstrates that Reliant was tasked with determining "the specific techniques and frequency of performance required to maintain these quality standards," including maintaining floors "free of loose cardboard, spills, food residue, or any other debris." ECF No. 26-2, Award Contract at 84-85.

The contract did contemplate a limited role for DeCA employees in the custodial services of the NWS Commissary. In an exhibit to the motion, the government attaches the affidavit of Janet Parsley, the produce manager at the NWS Commissary. Parsley

5

explains that DeCA staff workers are responsible for custodial maintenance before Reliant-employed "day custodial" workers arrive at 11:30 AM, and that pursuant to the contract between DeCA and Reliant from 11:30 AM until 6:00 PM, these "day custodial" workers are responsible for all custodial services in the NWS Commissary.  ECF No. 26-3, Parsley Aff. ¶ 7.  Parsley states that at approximately 2:00 PM on the date of Graham's fall she noticed that two "pig sock" tubes were full of liquid and needed to be replaced and that she then placed two "wet floor signs" in the produce section of the NWS Commissary.  ECF No. 26-3, Parsley Aff. at ¶ 10.  After this, Parsley states that she paged the Reliant "day custodial" worker Theo Marsh, and "conveyed to him the importance of keeping a lookout in the produce area to prevent moisture from getting on the rugs or the floor."  Id.  Graham's fall happened at 3:45 PM in the produce section.  Parsley's actions are in line with the responsibilities of DeCA employees set forth in the contract, which states under a section entitled "Emergency Cleaning-Government Notification" that:

> [w]hen the Government finds unclean or unsafe conditions in commissary entrance . . . the Government will notify the Contractor of such conditions . . . <u>Within 5 minutes of notification by the Government, the Contractor shall begin taking whatever action may be necessary to clean up or remove the condition identified</u>. . . During these clean up operations, the Contractor shall take appropriate precautions, such as blocking off unsafe areas, or posting 'wet floor' signs as needed.

ECF No. 26-2, Award Contract at 79 (emphasis in original).  The role set aside for DeCA employees in the contract does not disturb the court's conclusion that the contract covers a broad swath of day custodial services like the contract in <u>Williams</u>.

Other cases also support the court's decision to dismiss on the basis of the discretionary function exception.  For example, in <u>Viault v. United States</u>, 609 F. Supp.

2d 518, 521–22, 528. (E.D.N.C. 2009), the court held that the government's decision to engage third-party contractor Waste Industries to inspect freight trailers, precluded a plaintiff's suit where the plaintiff was injured by a fall through a hole in the floor of a freight trailer leased to the government by the contractor. The <u>Viault</u> court cited <u>Williams</u> in holding that "inspection of the trailer and [a subsequent] failure to post a warning sign after discovering the hazard, like the allegedly negligent acts in <u>Williams</u>, [we]re 'embraced by the overarching decision to engage' Waste Industries." <u>Id.</u> at 528 (quoting <u>Williams</u>, 50 F.3d at 310). Similarly, here the contract before the court has comprehensive language regarding the duty to inspect the NWS Commissary for just the type of custodial issue—namely, the wet floor of the produce section—that led to Graham's fall. Likewise, in <u>Cochran v. U.S.</u>, 38 F. Supp. 2d 986 (N.D. Fla. 1998), the court held that the discretionary function exception precluded Navy officials' liability for keeping a bowling alley open where a visitor to a Navy owned-and-operated bowling alley tripped and fell at the bowling alley. Now, in <u>Cochran,</u> the plaintiff did not contend that the Navy's decision-makers made any decisions that violated a federal statute or regulation. Here, Graham argues that the discretionary function exception is inapplicable because there are two statutes or regulations that govern the incident. Namely, Graham contends that the malfunctioning air conditioner was in violation of both standards set by the Occupational Safety & Health Administration ("OSHA") and the Naval Weapons Station Safety Program. ECF No. 35 at 5. Specifically, Graham argues that the "general duty clause" of the OSHA standard requires employers "to keep their workplace free of recognized hazards," and that she has retained the services of a registered professional engineer who will conduct a site inspection and determine if OSHA and the Safety

7

Program policies were violated by the leaking air conditioner. Id. If there is a mandatory statute, regulation, or policy on point, the plaintiff must show that the governmental actor failed to adhere to this standard. Baum, 986 F.2d at 720 (internal citations omitted). But the court is not convinced that either the OSHA standard or the Naval Weapons Station Safety Program governs leaky air conditioners in the NWS Commissary, and Graham has failed to present any compelling argument otherwise. OSHA is a statute meant to protect employees from workplace hazards, and Graham was an invited guest to the Commissary. And it would be a stretch—to be generous—for this court to accept that the Naval Weapons Station Safety Program extends to a leaking air conditioner in the NWS Commissary.

DeCA's contract with Reliant falls squarely within the discretionary function exception. It fulfills both steps of the Gaubert test. First, DeCA's decision to enter into a contract with Reliant for custodial and maintenance services was a matter of choice. Graham has not made a convincing argument that the matter in which the NWS Commissary was maintained was specifically prescribed by either OSHA or the standards of the Naval Weapons Station Safety Program. Given that the decision to contract involves an element of choice, the court must determine "whether that judgment is of the kind the discretionary function exception was designed to shield." Gaubert, 499 U.S. at 322–23. It finds that it is. The discretionary function exception "prevent[s] judicial 'second guessing' of legislative and administrative decision grounded in social, economic, and political policy through the medium of an action in tort." Id. at 323. This second prong of Gaubert encompasses both administrative and planning level decisions, as well as day-to-day operational decisions. See id. at 323–24. The decision to enter into

a contract with Reliant for custodial services is based on economic and policy considerations, and so fulfills both prongs of this test.  Because Graham has not overcome the presumption that the contract is grounded in policy and is a discretionary action by alleging facts showing that "the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime," id. at 325, the court grants the government's motion to dismiss because Graham's suit is barred by the discretionary function exception.

### 2. Independent Contractor Exception

The government argues that as an alternative ground for dismissal due to lack of subject matter jurisdiction, the independent contractor exception of the FTCA precludes this suit against the government.  The court is less convinced by this argument, as the Parsley affidavit seems to reveal a supervisory relationship between DeCA employees and Reliant custodial workers that is at odds with the language of the contract.  However, the court finds that as an alternative ground for dismissing the suit against the government that the independent contractor exception also operates to bar Graham's FTCA suit.

The FTCA allows plaintiffs to sue the United States for injuries resulting from certain torts of government employees, with the statute defining "'[e]mployee of the government' includes officers or employees of any federal agency, members of the military or naval forces of the United States, . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States."  28 U.S.C. § 2671.  The term "federal agency" explicitly excludes "any contractor with the United States."  Id. Therefore, Congress has not waived the sovereign

immunity of the United States for injuries resulting from the actions of independent contractors performing work for the government. See United States v. Orleans, 425 U.S. 807, 814 (1976).

A review of the contract demonstrates that Reliant is a contractor as opposed to an employee or agent of DeCA. The Supreme Court in Logue v. United States, 412 U.S. 521, 527 (1973) has held that this distinction between independent contractors and employees of the United States turns on "the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract." The Logue court held that the authority of the United States to enter the facility for the purpose of inspection and evaluation did not alter the result that facility's workers were independent contractors. Id. at 529–30. In United States v. Orleans, 425 U.S. 807, 810 (1976), the Supreme Court stated that "the question here is not whether the [contractor] receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government." Therefore, the operative question is whether DeCA had the ability to supervise day-to-day operations of the Reliant employees.

The contract delegates daily custodial tasks, including the specific task of floor spot cleaning, to Reliant. ECF No. 26-2, Contract at 84. The contract goes on to states that "[t]he Government shall not exercise any supervision or control over Contractor personnel performing services under this contract. Contractor personnel shall not be placed under the supervision, direction, or evaluation of a Federal officer, military or civilian, in connection with performance under this contract." Id. at 34. The contract specifically states that "no employer-employee or master-servant relationship exists or

immunity of the United States for injuries resulting from the actions of independent contractors performing work for the government. See United States v. Orleans, 425 U.S. 807, 814 (1976).

A review of the contract demonstrates that Reliant is a contractor as opposed to an employee or agent of DeCA. The Supreme Court in Logue v. United States, 412 U.S. 521, 527 (1973) has held that this distinction between independent contractors and employees of the United States turns on "the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract." The Logue court held that the authority of the United States to enter the facility for the purpose of inspection and evaluation did not alter the result that facility's workers were independent contractors. Id. at 529–30. In United States v. Orleans, 425 U.S. 807, 810 (1976), the Supreme Court stated that "the question here is not whether the [contractor] receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government." Therefore, the operative question is whether DeCA had the ability to supervise day-to-day operations of the Reliant employees.

The contract delegates daily custodial tasks, including the specific task of floor spot cleaning, to Reliant. ECF No. 26-2, Contract at 84. The contract goes on to states that "[t]he Government shall not exercise any supervision or control over Contractor personnel performing services under this contract. Contractor personnel shall not be placed under the supervision, direction, or evaluation of a Federal officer, military or civilian, in connection with performance under this contract." Id. at 34. The contract specifically states that "no employer-employee or master-servant relationship exists or

immunity of the United States for injuries resulting from the actions of independent contractors performing work for the government. See United States v. Orleans, 425 U.S. 807, 814 (1976).

A review of the contract demonstrates that Reliant is a contractor as opposed to an employee or agent of DeCA. The Supreme Court in Logue v. United States, 412 U.S. 521, 527 (1973) has held that this distinction between independent contractors and employees of the United States turns on "the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract." The Logue court held that the authority of the United States to enter the facility for the purpose of inspection and evaluation did not alter the result that facility's workers were independent contractors. Id. at 529–30. In United States v. Orleans, 425 U.S. 807, 810 (1976), the Supreme Court stated that "the question here is not whether the [contractor] receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government." Therefore, the operative question is whether DeCA had the ability to supervise day-to-day operations of the Reliant employees.

The contract delegates daily custodial tasks, including the specific task of floor spot cleaning, to Reliant. ECF No. 26-2, Contract at 84. The contract goes on to states that "[t]he Government shall not exercise any supervision or control over Contractor personnel performing services under this contract. Contractor personnel shall not be placed under the supervision, direction, or evaluation of a Federal officer, military or civilian, in connection with performance under this contract." Id. at 34. The contract specifically states that "no employer-employee or master-servant relationship exists or

will exist," and that all Reliant personnel "shall be responsible, not to the Government but solely to the Contractor." Id. at 33–34. Certainly, the contract seems to make clear that DeCA employees have no authority to "physically supervise" Reliant employees such as the day custodial staff that was tasked with cleaning up the NWS Commissary at the time of Graham's fall. But the Parsley affidavit does state that she noticed that the "pig socks" were dark and called over a Reliant day custodial worker and instructed him to mop up the floor, put up "wet floor" signs, and presumably change out the "pig socks" so that the air conditioner would no longer be leaking. This happened at 2 PM, during the time period that the contract states Reliant day custodial workers are exclusively responsible for maintenance of the NWS Commissary. ECF No. 26-3, Parsley Aff. ¶ 7–10. This gives the court some pause but ultimately does not disturb the court's finding that Reliant was an independent contractor.

The FTCA applies to only the negligence of United States employees acting within the scope of their employment; it does not apply to the negligence of independent contractors providing services pursuant to contracts with the United States. Accordingly, the independent contractor exception also operates to preclude Graham's FTCA suit against the government.

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS** the government's motion to dismiss.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**March 1, 2018
Charleston, South Carolina**